**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-25060-Civ-BECERRA/TORRES

GENESIS CUSTOM JETLINERS, LLC,
a Delaware limited liability company,

      *Plaintiff*,

v.

ASG AEROSPACE, LLC, a Florida
limited liability company,
GLOBAL AIR CHARTERS, INC.,
a Connecticut corporation, and
A&P PLUS STRUCTURES, INC.,
a Florida corporation,

      *Defendants*.

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION TO COMPEL ARBITRATION**

    This matter is before the court on a Motion ("the Motion") to (1) compel arbitration; (2) dismiss or stay this lawsuit pending completion of its arbitration commenced against the plaintiff, or alternatively, and (3) dismiss this lawsuit based on a contractual forum selection clause in the agreement, filed by Defendant GLOBAL AIR CHARTERS, INC. ("Global") on February 14, 2025. [D.E. 15]. Plaintiff GENESIS CUSTOM JETLINERS, LLC ("Genesis") filed a Response in opposition to the Motion on March 7, 2025, [D.E. 26], and Defendant's Reply followed on March 14, 2025. [D.E. 35]. After careful consideration of the Motion, response, reply, relevant

1

authority, and for the reasons discussed below, Defendant's motion should be **GRANTED**.[1]

## I.      BACKGROUND

Plaintiff Genesis is a private charter service that owns various aircraft, including a Boeing Model MD-87 ("Aircraft"). [D.E. 1 at ¶ 8]. In January 2021, Genesis entered into an agreement with Defendant Global to oversee maintenance on the Aircraft that the two other named Defendants, ASG Aerospace LLC and A&P Plus Structures Inc., were performing. *Id.* at ¶¶ 9–14. The agreement states that Global was not only responsible for overseeing the maintenance of the Aircraft, but also ensuring that the Aircraft met "the standards and guidelines established by the Federal Aviation Administration. [D.E. 1-2 at § 4.1].

To meet these agency standards, Global arranged for the Aircraft to be inspected by a Designated Airworthy Representative in order to secure a Certificate of Airworthiness for the Aircraft. [D.E. 1 at ¶¶ 15–16]. The Certificate was secured on January 16, 2023, so that the Aircraft could be ferried from Miami, Florida, to Ontario, Canada, on January 23, 2023. *Id.* Prior to the Representative's inspection, Global commenced its own maintenance inspection to ensure the Aircraft met the requirements to be added to Global's own certificate as an air charter operator under Federal Aviation Regulations. *Id.* at ¶ 15.

---

[1]      The Honorable Judge Jacqueline Becerra referred the Motion to the undersigned on March 14, 2025. [D.E. 34].

Shortly after the Aircraft departed Miami Executive Airport on January 23, 2023, it experienced engine failure and was forced to make an emergency landing at Miami International Airport. *Id.* at ¶ 17.  Later inspection of the Aircraft revealed that it was not in an airworthy condition and should not have been approved for its Certificate of Airworthiness. *Id.* at ¶ 18.

After this incident, a dispute arose between Global and Genesis based on Genesis's refusal to pay for services rendered and invoiced by Global [D.E. 15 at 3]. As a result, on November 14, 2024, Global commenced an action via arbitration with the American Arbitration Association, as mandated under the original agreement between Global and Genesis. *Id.* Specifically*,* Paragraph 18 of that agreement provides:

> Any claim, controversy or dispute arising out of or relating to this Agreement, or the breach thereof, will be submitted to arbitration in Minneapolis, MN. The arbitration proceedings will be non-binding and conducted in accordance with the Uniform Arbitration Act as adopted in the State of Minnesota and the then existing rules and regulations of the American Arbitration Association governing commercial transactions.

[D.E. 1-2 at § 18].

The following day, November 15, 2024, Global also filed a lawsuit against Genesis in the Ramsey County District Court in Minnesota pursuant to the forum selection clause of the original agreement, which states that

> This Management Agreement will be interpreted and governed by the laws of the State of Minnesota. The Parties agree that the Ramsey County Superior Court has personal jurisdiction over them as to any dispute arising out of this Agreement, and that venue will be in Ramsey County, Minnesota.

[D.E. 15 at 3]; [D.E. 1-2 at § 14.4].

Shortly before the deadline to respond to the arbitration and the Ramsey County Action, Genesis pivoted by filing filed its own lawsuit in our District on December 23, 2024. [D.E. 15 at 4]. In its Complaint, Genesis alleges counts for breach of contract, negligent misrepresentation, and fraud against Global for its alleged failure to properly oversee the maintenance and inspection of the Aircraft as mandated under the agreement. [D.E. 1 at ¶¶ 42–61]. Similar claims are alleged against the entities performing the maintenance on the aircraft, ASG Aerospace and A&P Plus Structures. They are not parties to this arbitration dispute.

Global, needless to say, did not agree to just litigate these Genesis claims in this District. Instead it responded by moving to (1) compel Genesis to arbitrate this agreement, (2) dismiss or stay pending completion of the arbitration, or alternatively, (3) dismiss based on the forum selection clause in the agreement. [D.E. 15].

As we explain below, Global's position is more persuasive and legally founded based on the contract provisions at issue and the settled law in this Circuit. Global's motion should be granted and arbitration compelled under the AAA proceeding Global already filed. This action, as to claims asserted against Global, can thus be Dismissed on that basis, leaving the remaining claims and party defendants joined in the action to litigate over those separate issues without Global.[2]

---

[2]   Note, however, that one of those separate defendants, ASG Aerospace, filed a cross-claim [D.E. 43] against Global for fraud and negligent misrepresentation, which cross-claim is the subject of a motion to dismiss that is not addressed here. [D.E. 44].

4

## II.   APPLICABLE LEGAL PRINCIPLES

Under the Federal Arbitration Act ("FAA"), contractual arbitration agreements involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2.[3] "The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption – a 'national policy' – in favor of arbitration." *Parnell v. Cash Call, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). But, the FAA's presumption in favor of arbitration "only applies to disputes that the parties have agreed to arbitrate." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985)).

"When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc., v. Kaplan,* 514 U.S. 938, 944 (1995). Thus, the enforceability of an arbitration agreement and any relevant

---

[3]     The FAA applies here because the agreement at issue involves interstate commerce. *See* 9 U.S.C. §§ 1–2. "Involving interstate commerce" means only that the transaction in fact involves interstate commerce "even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995). Here, Genesis is a Delaware company with its principal place of business in New York. [D.E. 1 at ¶ 2]. Global is a Connecticut corporation with its principal place of business in Minnesota. *Id.* at ¶ 4. Because the contract at issue charged Global with ensuring that aircraft maintenance met Federal Aviation Regulations and was fit to fly from Miami, Florida to Ontario, Canada, there can be no question that the contract at issue involves interstate commerce for FAA purposes. *Id.* at ¶¶ 15–16.

defenses is governed by state contract law. *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 630–31 (2009).

Under Section 4 of the FAA, courts can then compel arbitration when a party bound by a written arbitration agreement has failed, neglected, or refused to comply with that agreement. 9 U.S.C. § 4. Where the court finds that a valid arbitration agreement exists between the parties, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* Further, the FAA "leaves no room for the exercise of discretion by a district court," but instead requires that parties "shall [be] direct[ed]…to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Motions to compel arbitration are treated as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Hence, when ruling on a motion to compel arbitration, the Court "may consider matters outside the four corners of the complaint." *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1292 (S.D. Fla. 2017).

## III.   ANALYSIS

We begin with the predicate question of whether the parties in this case agreed to arbitrate disputes arising under their contractual relationship.  Under Florida Law, an agreement to arbitrate is enforceable if: (1) a valid, written agreement to arbitrate exists; (2) an arbitrable issue exists; and (3) the parties have not waived

their right to arbitration. *O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd.*, 944 So. 2d 181, 185 (Fla. 2006). Florida courts "look to the intent of the parties as manifested in the contract to determine whether an arbitration clause compels arbitration of a particular dispute." *Id.* at 185. Moreover, Florida courts "construe the scope of arbitration provisions in favor of arbitrability." *Steritech Group, Inc. v. Mackenzie,* 970 So. 2d 895, 899 (Fla. 5th DCA 2007).

### A.   *An agreement to arbitrate exists between Global and Genesis.*

Global and Genesis have a valid written agreement to arbitrate. There is no dispute that both parties signed a valid arbitration agreement stating that "Any claim, controversy or dispute arising out of or relating to this Agreement, or the breach thereof, will be submitted to arbitration in Minneapolis, MN." [D.E. 1-2 at § 18]; [D.E. 1 at ¶ 10]. Provisions like these are regularly deemed sufficient to give rise to an arbitrable agreement. *See, e.g.*, *Blumberg v. Berland*, 678 F.2d 1068 (11th Cir. 1982) (holding that arbitration was mandatory for a fraud claim under an arbitration agreement that employed "arising out of or relating to" language); *see also Parks IP L., LLC v. Wood*, 755 F. App'x 884, 888 (11th Cir. 2018) (finding that arbitration was proper for a breach of contract claim when the arbitration agreement utilized "arising out or relating to" language).

The agreement then states that "The arbitration proceedings will be non-binding and conducted in accordance with the Uniform Arbitration Act as adopted in the State of Minnesota and the then existing rules and regulations of the American Arbitration Association governing commercial transactions." [D.E. 1-2 at § 18].  This

provision is what Genesis latches onto in arguing that the parties' contract did not give rise to an enforceable arbitration agreement. While the Eleventh Circuit has never addressed whether the FAA applies to non-binding arbitration agreements, other circuits have. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209 (9th Cir. 1998) ("we hold that arbitration need not be binding in order to fall within the scope of the Federal Arbitration Act."); *see also Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 747 (8th Cir. 2003) ("Binding arbitration is no doubt the norm under the FAA, but no express language limits the statute to binding arbitration agreements."); *United States v. Bankers Ins. Co.*, 245 F.3d 315, 322 (4th Cir. 2001) (concluding that non-binding arbitration is not precluded from being enforced).

For instance, in *Wolsey*, the court held that mandatory non-binding arbitration agreements are enforceable under the FAA. *Wolsey*, 144 F.3d at 1208–09. The court reasoned that, in addition to the strong presumption favoring arbitration, "[t]he arbitrator's decision need not be binding in the same sense that a judicial decision needs to be to satisfy the constitutional requirement of a justiciable case or controversy, . . . " especially when arbitration is sought to preclude litigation. *Id.; see also UHC Mgmt. Co. v. Computer Scis. Corp.*, 148 F.3d 992, 997 (8th Cir. 1998) (concluding that the court "will not interpret an arbitration agreement as precluding the application of the FAA unless the parties' intent that the agreement be so construed is abundantly clear.").

In this case, Genesis has proffered no evidence to suggest that the parties intended for the agreement to be interpreted beyond the scope of the FAA. The non-

binding nature of the arbitration does not serve as "abundantly clear" evidence that the parties intended for the agreement to be unenforceable under the FAA. Additionally, Genesis has not put forward any theories that the agreement should be invalidated for general contract defenses, such as fraud, duress, or unconscionability. *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132-34 (11th Cir. 2010) (holding that the agreements to arbitrate under the FAA can be invalidated under general contract defenses such as fraud, duress, or unconscionability).

Instead, Genesis's sole argument against recognizing a valid arbitration agreement is that the parties' use of a non-binding arbitration agreement is actually a "mediation" agreement, because non-binding arbitration does not guarantee a final and binding decision on the parties. [D.E. 26 at 6–7]. Genesis, however, cites no on-point authority for this proposition. In fact, Genesis misconstrues the one case it does cite to support its position. [D.E. 26 at 7].

In *Advanced Bodycare*, a contract provision required all disputes to be submitted to non-binding arbitration *or* mediation. *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1237 (11th Cir. 2008). The court narrowly held that a "dispute resolution clause that may be satisfied by arbitration *or* mediation . . ." was not enforceable under the FAA. *Id.* at 1240. The court reasoned that, because mediation does not produce a final award, and therefore does not resolve a case in any way, it is not "an agreement to settle by arbitration a controversy" required by the FAA. *Id.* at 1239–40. Thus, where "an aggrieved party has an unconditional right

to choose between two or more dispute resolution procedures, and one of them is not FAA arbitration . . . [,]" a party cannot be compelled to arbitrate. *Id.* at 1238.

But there is a glaring difference between this case and *Advanced Bodycare,* Unlike *Advanced Bodycare*, where the agreement explicitly called for "arbitration *or* mediation," here the agreement only calls for "non-binding" arbitration and never mentions or refers to "mediation." Importantly, *Advanced Bodycare* does not stand for the proposition that non-binding arbitration, by itself, cannot compel arbitration under the FAA. In fact, the court explicitly belied this assumption when it stated that "we reserve for another day whether *non-binding* arbitration is within the scope of the FAA." *Id.* at 1240–41.   So, Genesis in opposition to the motion to compel arbitration hangs its hat on a very distinguishable case that does not stand at all for the legal principles that it espouses.

The circuits that have directly dealt with whether non-binding arbitration alone falls under the FAA are unanimous in enforcing arbitration.  *See Wolsey,* 144 F.3d at 1209 (reversing denial of motion to compel arbitration; "The FAA is no less applicable to the Development Agreement between Wolsey and Foodmaker than it would be if the parties had agreed to submit to binding arbitration."); *Dow Corning,* 335 F.3d at 747 (finding that non-binding arbitration agreement fell within an arbitration agreement under the FAA so court had jurisdiction under section 10 of the Act to review an arbitration award for defects in the decision); *United States v. Bankers,* 245 F.3d at 322 (reversing denial of motion to compel arbitration concluding that permissive arbitration is still enforceable against the government; "Although

non-binding arbitration may turn out to be a futile exercise—because the FIA can ultimately reject an arbitrator's decision—this fact does not, as a legal matter, preclude a non-binding arbitration agreement from being enforced."). These decisions from other Courts of Appeal are heavily persuasive. *See Sokol Bros. Furniture Co. v. Comm'r*, 185 F.2d 222, 224 (5th Cir. 1950) ("In any event, the decision of another Court of Appeals upon an issue and principle the same is properly entitled to great weight, and itself affords persuasive argument in the determination of the present case.").

And, notably, no circuit that has directly addressed this issue disagrees that mandatory, non-binding arbitration agreements are enforceable under the FAA.[4] *See also AMF Inc. v. Brunswick Corp.,* 621 F. Supp. 456, 460 (E.D.N.Y. 1985) (Weinstein,

---

[4] In *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, 391 F. Supp. 2d 541, 578–59 (S.D. Tex. 2005), a district court judge found that "the Third Circuit disagrees with the Ninth Circuit's ruling in *Wolsey*" on whether non-binding arbitration falls under the FAA. He held that the non-binding nature of those parties' agreement did not warrant compelling arbitration over one party's objection. Yet, the two Third Circuit cases cited in support of this conclusion do not directly address or decide whether a mandatory, non-binding arbitration agreement alone is enforceable under the FAA. First, in *Harrison*, the court only held that compelling non-binding arbitration under the FAA was incompatible with statutory motor vehicle claims governed by a state's Lemon Law. *Harrison v. Nissan Motor Corp. in U.S.A.*, 111 F.3d 343, 349 (3d Cir. 1997). Notably, the court declared that "*we need not reach the question whether the FAA applies to nonbinding arbitration in general . . . .*" *Id.* at 350 (emphasis added). Second, in *Dluhos*, the court only ruled that a nonbinding domain name resolution policy administered entirely over the internet was merely an optional procedure that was "never intended to replace formal litigation," and therefore was not enforceable under the FAA. *Dluhos v. Strasberg*, 321 F.3d 365, 371 (3d Cir. 2003). As a result, these Third Circuit rulings cannot be treated as holdings in opposition with *Wolsey*, so the district court's conclusion lacks meaningful support. But in any event the Ninth Circuit on-point opinion is far more persuasive and fully consistent with the Eleventh Circuit's long-held support for enforcement of arbitration agreements.

J.) (compelling FAA arbitration where parties "agree[ ] to submit a dispute for a decision by a third party" and "[t]he arbitrator's decision need not be binding in the same sense that a judicial decision needs to be to satisfy the constitutional requirement of a justiciable case or controversy").

Therefore, we conclude that the parties in fact entered into an enforceable arbitration agreement in this case, despite the inclusion of a "non-binding" aspect of the arbitration contemplated in the agreement. That agreement is thus fully enforceable as a matter of Florida law and in accordance with the procedural remedies provided for by the FAA. Global has thus satisfied the first requirement of the Court's arbitration-clause enforceability analysis.

### B. *All claims brought by Genesis are arbitrable issues.*

The dispute between the parties relates to the agreement and, therefore, falls within the scope of the broad arbitration clause. To reiterate, there is a strong presumption in favor of enforcing arbitration agreements, particularly when the language used in the agreement is broad. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

With this presumption in mind, we must determine whether the facts alleged under the complaint fall within the scope of the arbitration clause. *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008); *see also Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 384 (11th Cir. 1996) ("Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted.").

To find that the facts alleged under the complaint fall under a broad arbitration clause covering disputes "arising out of or relating to" an agreement, the proper test focuses on whether the dispute was an "immediate, foreseeable result of the performance of contractual duties." *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001). In other words, "disputes that are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause." *Id.*

The dispute between Global and Genesis is a direct and foreseeable result of contractual duties. First, the agreed-upon arbitration agreement states that "any claim, controversy, or dispute arising out of or relating to this agreement, or breach thereof, will be submitted to arbitration . . . ." [D.E. 1-2 at § 18]. Therefore, like *Telecom*, the agreed-upon arbitration clause uses broad language that favors arbitration.

Second, the agreement mandated that Global needed to maintain the Aircraft per FAA standards, while also ensuring that the aircraft remained in "good operating condition" and "a flight-readiness state". [D.E. 1-2 at § 4.1]. Genesis alleges that Global breached, negligently misrepresented, or fraudulently misrepresented its duty to inspect and properly oversee maintenance on the aircraft per its contractual duties, which directly resulted in engine failure and an emergency landing at Miami International Airport. [D.E. 1 at ¶¶ 42–61]. Because Global was tasked with maintaining the aircraft in a flight-ready state, and all three of Genesis's claims

13

allege that Global did not maintain the aircraft accordingly, the facts alleged in the complaint are central to the agreement. Consequently, the dispute is clearly a foreseeable result of contractual duties and is thus contemplated within the broad language in the arbitration agreement. *See, e.g.*, *Phillips v. NCL Corp. Ltd.*, 824 F. App'x 675 (11th Cir. 2020) (holding that a breach of contractual duties was a foreseeable dispute and therefore fell within the scope of a broad arbitration clause); *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1321-23 (11th Cir. 2002) (thrust of the complaint are damages for other party's "misconduct and breach of contract" which falls squarely within the "such dispute" language in the parties' arbitration clause; non-moving party's stricter construction ignores the contractual provisions in context and makes little sense).

Importantly, Genesis ignored this step of the arbitration-clause enforceability analysis and presented no argument that its claims against Global do not fall under the arbitration agreement. Genesis's strongest argument, albeit indirectly made, suggests that, as the other named defendants participated in providing services for the aircraft, and given that both companies and their witnesses are based in Florida, a complete resolution of the dispute in Minnesota would be inefficient. [D.E. 26 at 5–6]. But this argument is ineffective because "arbitration must be ordered 'even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" *Telecom Italia*, 248 F.3d at 1117 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

Consequently, all claims brought by Genesis are subject to arbitration, and Global has met the second requirement of the Court's arbitration-clause enforceability analysis.

### C.   _Global has not waived its right to arbitration._

Finally, we agree with Global that it has not waived its contractual right to arbitrate in this case. Because the Eleventh Circuit has no bright-line rule as to what constitutes waiver of an arbitration agreement, courts "review whether a waiver has occurred based on the facts of each case." _Pinnacle Constructors Grp. LLC v. SSC Tuscaloosa Apartments LLC_, No. 23-13397, 2024 WL 3042536, at *2 (11th Cir. June 18, 2024). Under contract law or otherwise, a "waiver" is the "intentional relinquishment or abandonment of a known right." _United States v. Olano_, 507 U.S. 725, 733 (1993) (internal quotation marks omitted). To decide whether a waiver has occurred, "the court focuses on the actions of the person who held the right" and asks whether that party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right?" _Morgan v. Sundance, Inc._, 596 U.S. 411, 417 (2022) (holding that waiver analysis for purposes of the FAA does not require a showing of prejudice on the party opposing the arbitration).[5]

---

[5]     Unlike the broader arbitrability question, claims of waiver implicate federal law principles that do not require examination of state law. _See Morgan,_ 596 U.S. at 416-17; _S&H Contractors,_ 906 F.2d at 1514 ("Our determination of whether S&H waived its right to arbitration, as opposed to whether the contract is void under Alabama law, is controlled solely by federal law."); _Amargos v. Verified Nutrition, LLC,_ 653 F. Supp. 3d 1269, 1274 (S.D. Fla. 2023) (explaining that binding precedent dictates that questions of waiver are ones of federal law after _Morgan_).

In this case-specific analysis, a "key factor in deciding this is whether a party has 'substantially invoke[d] the litigation machinery prior to demanding arbitration.'" *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) (quotation omitted); *Warrington v. Rocky Patel Premium Cigars, Inc.*, No. 22-12575, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023) ("A party has waived its right to arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right."). Moreover, when a party seeks to exercise its arbitration rights, it must give fair and timely notice to the opposing party and the relevant district court. *Gutierrez*, 889 F.3d at 1236, *cited in Payne v. Savannah Coll. of Art & Design, Inc.*, 81 F.4th 1187, 1201 (11th Cir. 2023) ("Our waiver doctrine is typically implicated when parties have 'invoked the litigation machinery' before reversing course and claiming that arbitration was the proper avenue all along.").

A party acts consistently with its right to arbitration even if it files a motion to compel just two months after initially filing a complaint. *See, e.g.*, *Pinnacle*, 2024 WL 3042536, at *2 (motion to compel filed two months after filing suit and after engaging in one Rule 26(f) discovery meeting was not evidence of a waiver of arbitration; the moving party "did not evince a clear intent to litigate this matter prior to asserting its right to arbitrate and thus did not act 'inconsistently with its arbitration right.'"); *see also Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1016 (9th Cir. 2023) (even after *Morgan*, no waiver of arbitration where defendant "never wavered from the view that it had a right to arbitration, as evidenced by Michaels moving to compel arbitration within a year after Armstrong filed the complaint [but immediately after

Supreme Court overturned earlier Ninth Circuit precedent barring enforcement of class waivers for arbitration], never seeking or obtaining a ruling on the merits, and never waffling about whether to arbitrate or stay in district court.")

In contrast, a party acts inconsistently with its right to arbitrate when it engages in extensive pretrial proceedings and only files a motion to compel many months after filing of the initial complaint. *See S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (holding that the moving party acted inconsistently with its arbitration right when it filed two motions and deposed five employees before seeking to compel arbitration), *abrogated on other grounds by Morgan v. Sundance, Inc.,* 596 U.S. 411 (2022); *see also White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 340 (3d Cir. 2023) (waiver of arbitration followed defendant's decision to pursue multiple motions to dismiss on the merits over two years, which were in part successful, and filing belated motion to compel "[o]nly after it was apparent that further litigation would be required, and it could not get the case fully dismissed before discovery, . . . ."); *Soriano v. Experian Info. Sols., Inc.*, No. 2:22-CV-197-SPC-KCD, 2022 WL 17551786, at *2-3 (M.D. Fla. Dec. 9, 2022) (holding that waiver of arbitration followed defendant's pursuit of litigation for four months that included filing an answer, an amended answer, exchange of discovery, participation in mediation, submission of a case management report requesting a jury trial, and attendance at a pretrial conference, all before seeking arbitration); *Gaudreau v. My Pillow, Inc.*, No. 6:21-CV-1899-CEM-DAB, 2022 WL 3098950, at *8 (M.D. Fla. July 1, 2022) (finding waiver of arbitration after defendant removed the case to federal court,

answered two complaints without referencing its right to arbitrate, and participated in the litigation for eight months thereafter).

Global has not acted inconsistently with its right to arbitration. Unlike *S & H Contractors*, where the moving party filed its motion to compel eight months after submitting its initial complaint and engaging in extensive pre-trial proceedings, here Global first commenced its arbitration action and then promptly filed its Ramsey County Complaint a day later that was designed to further its arbitration demand. Then, when this parallel action was filed Global immediately moved to compel arbitration here as soon as Genesis moved to dismiss both actions in Minnesota.

Global's actions can hardly be seen as "substantially invoking the litigation machinery" prior to arbitration, as Global has put forth a sworn declaration that the complaint was filed "to proceed upon the completion or mutual waiver of the AAA arbitration." [D.E. at 16, ¶ 8]. Moreover, Global has consistently provided notice of its intent to compel arbitration before seeking litigation, not only in Minnesota but also promptly after Genesis filed its suit in this District.  Unlike cases like *Soriano* and *Gaudreau*, Global announced its right to seek arbitration immediately after the filing of the action (and indeed even before this parallel case was filed) and sought enforcement of that right here before any unrelated proceedings ever ensued.

Thus, viewing the facts under a "totality of the circumstances," Global did not intend to litigate this dispute prior to compelling arbitration. *Pinnacle*, 2024 WL 3042536 at *2 (quoting *S&H Contractors*, 906 F.2d at 1514). Not only does the Ramsey County Complaint comply with the disputed forum-selection clause in the

agreement, but it also aligns with the non-binding nature of the arbitration agreement. Because the arbitration is non-binding, it does not guarantee that the dispute will be resolved. Therefore, it is understandable that Global might file suit in Ramsey County should arbitration efforts prove unsuccessful.

Moreover, Genesis's position lacks support. Global initially sought to compel arbitration in Minnesota, a day before filing its complaint and initiating the litigation process. Thereafter, Genesis opposed that motion and filed suit in this District, arguing that Global substantially invoked the litigation process and thereby waived its right to arbitrate. Genesis has cited no caselaw to support its position that Global has acted inconsistently and thereby waived its right to arbitration.

In fact, in the three cases that Genesis did cite for general waiver principles, none found waiver in the face of a motion to compel arbitration like this one. [D.E. 26 at 6–7]. *See Morgan,* 596 U.S. at 412 (case remanded to determine whether arbitration was waived because the lower court improperly employed a two-part waiver test that included a showing of prejudice);[6] *Derriman v. Mizzen & Main LLC*, 710 F. Supp. 3d 1129, 1137 (M.D. Fla. 2023) (holding that a contemporaneous removal and motion to compel arbitration was not a waiver); *Ibis Lakes Homeowners Ass'n,*

---

[6] Notably Global cites this two-part waiver test (which includes a showing of prejudice on the party opposing arbitration) that was previously applied in this Circuit. But, as cited above, this test was explicitly overruled in *Morgan,* 596 U.S. at 412 (holding that a two-part waiver test that analyzed whether a potential waiver prejudiced the non-moving party was incorrect because "courts are not to create arbitration-specific procedural rules like the one here.").

*Inc. v. Ibis Isle Homeowners Ass'n, Inc.*, 102 So. 3d 722 (Fla. Dist. Ct. App. 2012) (concluding that a party's limited involvement in discovery was not a waiver).

As a result, Global has not waived its right to arbitration. *See also Amargos,* 653 F. Supp. 3d at 1276 (Bloom, J.) (holding that no waiver of arbitration resulted from filing an answer but seeking arbitration two months later before any further proceedings ensued; "This case is in its infancy and limited judicial resources have been employed. Moreover, early in the proceedings, Defendant advised Plaintiff by email of its intent to seek arbitration and filed its Motion soon thereafter."); *Davis v. RealPage, Inc.*, No. 0:23-CV-61683, 2024 WL 278293, at *3 (S.D. Fla. Jan. 10, 2024), *Report and Recommendation adopted,* No. 0:23-CV-61683-WPD, 2024 WL 278191 (S.D. Fla. Jan. 25, 2024) (finding no waiver of arbitration despite service of offer of judgment after filing of action when defendant also filed an answer/motion to compel seeking arbitration within one month of being served).

Accordingly, Global has thereby satisfied all three prongs of the arbitration enforceability analysis.[7]  Global's position is thus legally sound and its motion should be compelled.

---

[7] Because this ruling on a motion to compel arbitration leaves nothing for this Court to adjudicate in this forum, we not not address whether dismissal is alternatively warranted based on the contractual forum selection clause in the agreement.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion to Compel Arbitration [D.E. 15] be **GRANTED**, that Genesis be **COMPELLED** to engage in arbitration in accordance with the previously filed AAA proceeding, and that all claims in Genesis's complaint against Global be **DISMISSED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 2d day of July, 2025.

EDWIN G. TORRES
United States Magistrate Judge